```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                    WESTERN DIVISION
```

UNITED STATES OF AMERICA

VERSUS                               CIVIL ACTION NO. 5:06cr18-DCB-JCS

ROBERT C. ARLEDGE                                          DEFENDANT

### ORDER

This matter comes before the court on the defendant's Motion to Strike Surplusage [**docket entry no. 23**], Motion for Pretrial Hearing Regarding Admissibility of Statements of Co-conspirators [**docket entry no. 27**], Motion to Dismiss for Violation of Grand Jury Secrecy [**docket entry no. 36**], Motion for a Juror Questionnaire to be Mailed and Returned Prior to Trial [**docket entry nos. 41 & 48**], and on the government's Partial Objection January 9, 2007 Order by Magistrate Judge [**docket entries no. 64**]. Having reviewed the Motions, briefs, responses, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds and orders as follows:

### ALLEGED FACTS

On May 26, 2006, a thirty-six count indictment was entered against Robert C. Arledge. Count one of the indictment contains an allegation that Arledge "knowingly and willfully conspired with others known and unknown" to commit mail fraud and wire fraud.[1]

---

[1] 18 U.S.C. § 371.

-1-

The government claims in counts two through five of the indictment that the defendant committed the crime of mail fraud[2] on four separate occasions. In counts six through eight, the government alleges that Arledge committed wire fraud[3] by transmitting three separate facsimiles, each of which contained falsified documents. The government avers in counts nine through thirty-four that the defendant committed twenty-six separate violations of money laundering.[4] Count thirty-five is a notice of forfeiture[5] for proceeds of Arledge's alleged acts of fraud. Count thirty-six is a notice of forfeiture[6] for proceeds of the defendant's alleged money laundering activities.

The indictment's factual underpinnings center around the defendant's alleged acts which were committed during the "Fen-Phen Settlement" process. According to the government, Arledge defrauded and conspired to defraud the manufacturers of the diet drug Fen-Phen and the Texas-based law firm that was handling the primary settlement negotiations. At this juncture, both sides have filed various motions, each of which will be addressed in turn.

**I.   Defendant's Motion to Strike Surplusage**

---

[2] 18 U.S.C. § 1341.

[3] 18 U.S.C. § 1343.

[4] 18 U.S.C. § 1957.

[5] 18 U.S.C. § 982(b)(1); 28 U.S.C. 2461(c).

[6] 18 U.S.C. § 982(a)(1).

Arledge argues that the Court should strike certain portions of the indictment pertaining to the money laundering counts. Counts nine through thirty-four are set forth by the government in chart format. A sample of the chart follows:

| Count | Date | Financial Institution | Transfer of funds | Amount | Description |
|---|---|---|---|---|---|
| 9 | 6/25/01 | AmSouth | Ck.No.1002 | $58,930 | House |

Arledge argues that the information contained under the heading "Description" should be stricken from the indictment. The defendant urges, "What the defendant purchased with [the allegedly laundered] funds has nothing to do with the charge. . . . The descriptions of the items purchased are thus irrelevant to the charge, and apparently are included in the indictment solely for the purpose of attempting to prejudice the jury [sic] by showing that the defendant spent large sums of money on luxury items." (M. to Strike, 2.)

The Court may only strike language as surplusage if it is irrelevant, inflammatory, and prejudicial. United States v. Graves, 5 F.3d 1546, 1550 (5th Cir. 1993). The government argues that the descriptions are not characterized in a negative light; rather, the descriptions simply set out in general terms how the allegedly laundered funds were used. Eight terms are used to describe the use of funds in the twenty-six laundering counts, they are: "house," "car," "credit card," "furniture," "charter plane," "drapes," "landscaping," and "New Orleans Saints Skybox." These

terms are not inflammatory. Moreover, the defendant has failed to show how he will be prejudiced by the indictment's inclusion of how the allegedly laundered funds were spent. In money laundering indictments, the government regularly includes how the defendant spent the allegedly laundered funds.

The defendant has failed to provide the Court with any case law where a court struck similar language from a money laundering indictment. Since the indictment's descriptions were not inflammatory or prejudicial, the defendant's argument is without merit.

**II. Motion for Pretrial James Hearing Regarding Admissibility of Statements of Co-conspirators**

Arledge moves for a pretrial hearing "to determine whether [the] statements made by alleged co-conspirators are admissible at trial." (Mem. M. for James Hearing, 1.) The defendant also argues that the Court should force the government to disclose "any such statements made by alleged co-conspirators which [the government] intends to offer at trial pursuant to Federal Rule of Evidence 801(d)(2)(E)." (Id.)[7]

---

[7] Inasmuch as the Court has already issued an order requiring the government to disclose, five days prior to trial, all witness statements that it intends to offer at trial, the defendant's motion for disclosure is denied. See United States v. Hansen, 2005 WL 1206868, *2-3 (N.D. Tex. May 18, 2005) (holding that defendant was not entitled to pretrial disclosure of coconspirators' statements). See also United States v. Tarantino, 846 F.2d 1384, 1418 (D.C. Cir. 1988).

Federal Rule of Evidence 801(d)(2)(E) provides, "A statement is not hearsay if . . . the statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." For coconspirators' statements to be admissible, the government bears the burden of proving by a preponderance of the evidence that (1) a conspiracy existed,[8] (2) the proffered statement was made by a coconspirator of the defendant, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy. United States v. Delgado, 401 F.3d 290, 298 (5th Cir. 2005). In United States v. James, 590 F.3d 575 (5th Cir. 1974), the Fifth Circuit expressly approved the practice of holding a pretrial hearing to determine whether the 801(d)(2)(E) predicate elements exist.

Accordingly, the Court will assemble the attorneys on February 6, 2007 and hold a James hearing. The attorneys' arguments should be tailored to the required predicate elements set forth above. At that time, the Court will also hear all other matters which may expedite the trial of this case.

**III. Defendant's Motion to Dismiss for Violation of Grand Jury Secrecy**

---

[8]It should be noted that "[t]he conspiracy that forms the basis for admitting the coconspirators' statements need not be the same conspiracy for which the defendant is indicted." United States v. Arce, 997 F.2d 1123, 1128 (5th Cir. 1993), quoted in United States v. Delgado, 401 F.3d 290, 299 (5th Cir. 2005).

Arledge argues that the indictment should be dismissed, or, in the alternative, that he is entitled to some other "appropriate remedy," because the government allegedly violated Federal Rule of Criminal Procedure 6(e),[9] which requires grand jury secrecy. (Mem. M. to Dismiss, 2.) The defendant claims that the government gave a retired FBI agent, Freddy Cleveland, documents that were part of the grand jury subpoena return of other witnesses. Additionally, Arledge alleges that the government used Cleveland's report to further its own investigation.

Pursuant to a court order, the government is required to provide Arledge with an opportunity to photocopy all documents that the government intends to proffer during its case in chief. The defendant claims to have become aware of the alleged secrecy violation during the government's court-ordered disclosure. Among the documents disclosed by the government was the report made by Cleveland. The box containing Cleveland's work product also contained documents that were part of other witnesses' grand jury subpoena returns. Arledge argues, "The only place where Cleveland could have obtained these particular documents would be from the

---

[9]Federal Rule of Criminal Procedure 6(e)(2)(B) states, "Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury: . . . (vi) an attorney for the government; or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii)." Government attorneys are entitled to disclose grand jury materials to "any government personnel . . . that an attorney for the government considers necessary to assist in performing that attorney's duty to enforce federal criminal law." Fed. R. Crim. P. 6(e)(3)(A)(ii).

grand jury's materials."

The government, however, provided the affidavit of FBI agent William J. Stokes, wherein he put forth an explanation for why the grand jury's materials were in the Cleveland box.  Agent Stokes is assisting the government in its prosecution of this matter, and he was present when Arledge's counsel perused the disclosed documents. Stokes stated in his affidavit that Cleveland provided his investigative report to the FBI on March 1, 2004.[10] These documents were photocopied by the FBI, and the copies were designated "1C1." Stokes claims that the FBI originally provided the "1C1" Cleveland report to the defendant for photocopying on April 10, 2006.  Then, in November of 2006, the defendant's attorney again requested the Cleveland files to make more photocopies.  To comply with the defendant's request, Stokes stated that he retrieved the "1C1" files from "the prosecutor's office."  (Stokes aff., 3.)  Stokes concludes, "The documents purported to be '1C1' by the Affiant were not examined by the Affiant for completeness; therefore, additional documents were inadvertently provided to the defense as part and parcel of '1C1.'  These documents contained in '1C1,' as identified by the Affiant, were released in error to the defense and were not provided to Freddy Cleveland as alleged in the Defendant's Motion to Dismiss."  (Id.)

---

[10]Cleveland's report contained documents that were allegedly falsified by the defendant and used to support the claims of the defendant's Fen-Phen plaintiffs.

Since, on the one hand, the Court has been presented with a sworn explanation from the government, and the defense, on the other hand, has provided nothing more than mere conclusory allegations to support the alleged secrecy violation, the Court is inclined to deny the defendant's motion. Moreover, even if protected grand jury documents were provided to Cleveland, the defendant has failed to show how he was prejudiced by such disclosure. Likewise, the defendant has not put forth any authority for the proposition that the Court should dismiss an indictment if the government violates Rule 6(e).

Accordingly, the indictment will not be dismissed. However, should the defendant wish to pursue this matter further at the pretrial evidentiary hearing, the Court will entertain argument on this issue. If the defendant intends to go forward with his secrecy argument, he is hereby ordered to specify exactly what other "appropriate remedy" he will seek at the hearing.

**IV.   Defendant's Motion for a Juror Questionnaire**

The defense argues that due to the publicity surrounding other Fen-Phen prosecutions, a questionnaire should be mailed out to the prospective jurors and returned prior to trial.[11] Arledge further argues that the submission of a questionnaire would save time during voir dire, reduce potential juror embarrassment, and

---

[11]Arledge has provided the Court with a proposed juror questionnaire.

minimize the chance that a potential juror could say something that would taint the entire venire. The government, although recognizing the Court's power to order the issuance of a questionnaire, argues that a questionnaire is not needed in this case. Instead, the government asks that the Court deny the defendant's motion and conduct voir dire in its usual manner.

The Court is of the opinion that a juror questionnaire is unnecessary in this trial. However, the Court has carefully considered the juror questionnaire proposed by the defendant. Many of the questions contained in the questionnaire are routinely submitted by the Court to prospective jurors during voir dire. Accordingly, the Court will pose to the venire those questions contained within the proposed questionnaire which the Court feels appropriate.

**V.    Government's Objection to Magistrate Judge Sumner's Order**

Lastly, the government objects, in part, to Magistrate Judge Sumner's Order of January 9, 2007, which required the government to "serve upon the Defendant a statement identifying those items which the government intends to use in its case-in-chief at trial" before January 17, 2007. The government argues that it is still in the process of narrowing down the exhibits that it plans to offer at trial; therefore, it needs additional time to comply with Judge Sumner's order.

Judge Sumner's order was entered before the trial of this

action was continued from February 6, 2007 to March 12, 2007.  As such, the January 17 disclosure deadline is not as critical as it was when Judge Sumner issued his order.  Accordingly, the Court will modify Judge Sumner's order to the extent that it requires disclosure before January 17, 2007.  The government is hereby ordered to provide the defense with the required disclosures before February 6, 2007.

## CONCLUSION

IT IS HEREBY ORDERED that the defendant's Motion to Strike Surplusage [**docket entry no. 23**] is **DENIED.**

IT IS FURTHER ORDERED that the defendant's Motion for Pretrial Hearing Regarding Admissibility of Statements of Co-conspirators [**docket entry no. 27**] is **GRANTED.**

IT IS FURTHER ORDERED that the defendant's Motion to Dismiss for Violation of Grand Jury Secrecy [**docket entry no. 36**] is **DENIED.**

IT IS FURTHER ORDERED that the defendant's Motion for a Juror Questionnaire to be Mailed and Returned Prior to Trial and Supplement to Juror Questionnaire [**docket entry nos. 41 & 48**] are **DENIED.**

IT IS FURTHER ORDERED that the government's Partial Objection January 9, 2007 Order by Magistrate Judge [**docket entries no. 64**] is **GRANTED.**

IT IS FURTHER ORDERED that the government comply with Judge

Sumner's discovery order before February 6, 2007.

SO ORDERED, this the 24th day of January, 2007.

S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE